# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# BATESVILLE DIVISION

**ALICE M. SHEPHERD**                                                      **PLAINTIFF**

v.                                        **No. 1:16-CV-00060-JTK**

**NANCY A. BERRYHILL,**
Deputy Commissioner for Operations,
performing the duties and functions
not reserved to the Commissioner of
Social Security                                                         **DEFENDANT**

## ORDER REMANDING TO THE COMMISSIONER

Alice Shepherd filed for social security disability benefits with an alleged onset date of July 17, 2008. (R. at 214). The administrative law judge (ALJ) denied her application after a hearing. (R. at 98–99). The Appeals Council remanded based on an incomplete record. (R. at 105). After a second hearing, the ALJ once again denied Poe's application. (R. at 28). The Appeals Council declined review. (R. at 1). Shepherd requested judicial review, and the parties have consented to the jurisdiction of the Magistrate Judge.

For the reasons stated below, this Court reverses and remands the Commissioner's decision.

## I.    The Commissioner's Decision

The ALJ found that Shepherd had the severe impairments of a history of scoliosis and learning disorder/borderline functioning. (R. at 11). The ALJ found that she had the residual functional capacity (RFC) to perform light work, with the ability to lift/carry and/or push/pull up to twenty pounds occasionally and ten pounds frequently; stand and/or walk at least six hours in an eight-hour workday; sit without significant limitations for up to six hours in an eight-hour workday or as otherwise demanded by

1

required job tasks; occasionally stoop, crouch, bend, kneel, crawl, and balance; never climb ropes, ladders, or scaffolding; and perform work that is simple, routine, and repetitive with supervision that is simple, direct, and concrete. (R. at 14). Shepherd had no past relevant work. (R. at 26). The vocational expert (VE) testified, however, that the RFC would allow Shepherd to perform jobs such as agricultural produce sorter or office helper. (R. at 27). The ALJ therefore held that Poe was not disabled. (R. at 28).

## II. Discussion

Shepherd argues that the ALJ improperly rejected the opinions of examining and treating sources and substituted his own opinions for the objective medical evidence. She also argues that the ALJ improperly denied her request for a consultative examination when the ALJ rejected the opinions of all the other examining sources. As the Court agrees that the ALJ improperly rejected the opinions of the examining and treating sources and impermissibly substituted his own opinion for the medical evidence, it is not necessary to reach her other point.

On review, this Court determines whether substantial evidence on the record as a whole supports the ALJ's decision. *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997). "Substantial evidence" is evidence that a reasonable mind would find sufficient to support the ALJ's decision. *Slusser v. Astrue*, 557 F.3d 923, 925 (8th Cir. 2009). Reversal is not warranted merely because substantial evidence exists to support a contrary conclusion. *Long*, 108 F.3d at 187.

While the ALJ bears the responsibility of determining a claimant's RFC based on the evidence, it is still ultimately a medical question that requires the support of some medical evidence. *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001).

The ALJ rejected every medical opinion before him. Anandaraj Subramanium, M.D. opined that Shepherd was moderately to severely disabled secondary to severe scoliosis and learning disability. (R. at 500). The ALJ rejected this opinion because "there is no evidence from which to conclude that Dr. Subramanium either completed formal testing for learning disability, or that the physician possesses any expertise in evaluating for such conditions." (R. at 25). Vann Smith, Ph.D. performed a neuropsychological evaluation from which he opined that Shepherd's impairments would interfere with her capacity to carry out routine daily activities in a consistent manner. (R. at 552). The ALJ rejected this opinion because "Dr. Smith appeared to rely heavily upon subjective reports of the alleged history of severely painful scoliosis, alleged traumatic brain injury, and other allegations of chronic pain." (R. at 25). The ALJ further stated that there was no objective evidence to support a history of traumatic brain injury or diminished brain function caused by reported head trauma. (R. at 26).

The ALJ is correct that there are no medical records regarding head injuries that Shepherd alleges as an infant and at the age of 11 or 12. This detail, however, has little to no bearing on the symptoms that Shepherd currently suffers from. Clearly, the issue is what she is capable of in a working environment rather than what caused her condition. Dr. Smith's neuropsychological evaluation consisted of a battery of tests that are objective in nature, and the ALJ's statement that his report is not objective is simply baffling after a serious review of the report. (R. at 549–52).

The only opinions the ALJ credited were the opinions of the non-examining State Agency consultants. (R. at 25). These opinions were rendered in May and July 2011. (R. at 510, 520). Neither of these consultants had the benefit of reviewing Dr. Smith's evaluation, which was conducted in October 2011. (R. at 549). Indeed, the State Agency

consultants rendered their opinions without the benefit of a number of exhibits that are now in the record.

Having rejected the only medical opinions of medical professionals who actually occupied the same room as Shepherd, the ALJ further compounded his error by choosing to rely on his own diagnostic opinion. The ALJ referred to a litany of his own observations in the decision, noting that Shepherd could use words the ALJ apparently deemed too advanced for a person with limited intellectual functioning. (R. at 18). The ALJ opined that Shepherd presented as "average" in terms of her appearance and performance with regard to her memory and detailed testimony. (R. at 18). The ALJ further opined that she exhibited "appropriate ability in terms of comprehension, attentiveness and responsiveness" to questions and "seemingly good verbal expression and speech/language skills, and good vocabulary usage" with "no obvious signs or manifestations or severe, or even noticeably significant, deficits in [her] abilities in terms of communication and/or social interaction." (R. at 19). The ALJ attempted to massage this lengthy digression into an appropriate consideration by noting that an ALJ is not to undertake diagnostic evaluation and characterizing his observations as merely "additional factors and evidence" that could be considered in "reaching a well-reasoned and legally supported decision." (R. at 19). The ALJ then discredited Shepherd further in noting she has not taken psychotropic medications or sought mental health treatment. (R. at 21). Unfortunately, medications and treatments for intellectual disability do not exist. Inclusion Europe & Mental Health Europe, *Mental Illness and Intellectual Disability*, http://digitalcommons.ilr.cornell.edu/gladnetcollect/276. There is no suggestion in the medical records that Shepherd has failed to seek appropriate treatment.

The ALJ discredited the testimony of Shepherd's aunt in part by noting that she had no specialized knowledge or training in psychology. (R. at 20). The ALJ discredited Dr. Subramanium for similar reasons. (R. at 25). The ALJ is not permitted to "play doctor." *Pate-Fires v. Astrue*, 564 F.3d 935, 947 (8th Cir. 2009). The Eighth Circuit has denounced "sit and squirm" tests, as "[a]ny system of administrative adjudication which would attach determinative weight to appearances would be fraught with the potential for manipulation." *Cline v. Sullivan*, 939 F.2d 560, 568 (8th Cir. 1991). Similar principles apply here. The ALJ's decision relies heavily on observations he made at the hearing while discounting the observations of people close to Shepherd and medical professionals. The ALJ's decision is not supported by substantial evidence on the record as a whole.

### III.  Conclusion

The ALJ improperly assessed the opinion evidence and impermissibly relied on his own medical assessment. This case is therefore remanded to the Commissioner with instructions to develop the record as necessary and to fully consider all the evidence of record and to properly consider all medical opinions.

It is so ordered this 3rd day of April, 2018.

_____
JEROME T. KEARNEY
UNITED STATES MAGISTRATE JUDGE